UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

SHANNELL GRILHO,

          Plaintiff,

   vs.

PIONEER HI-BRED INTRNATIONAL,
INC., ET AL.,

        Defendants.

CIV. NO. 17-00286 LEK-WRP

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendants Pioneer Hi-Bred
International, Inc. ("Pioneer"), and E.I. du Pont De Nemours and
Company's ("DuPont" and collectively "Defendants") Motion for
Summary Judgement ("Motion"), filed on August 21, 2019. [Dkt.
no. 47.] Plaintiff Shannell L. Grilho ("Plaintiff") filed her
memorandum in opposition on September 20, 2019, and Defendants
filed their reply on September 27, 2019.[1] [Dkt. nos. 50, 53.]
This matter came on for hearing on December 13, 2019. On
December 31, 2019, this Court issued an entering order outlining
its decision on the Motion. [Dkt. no. 56.] The instant Order

---

[1] Plaintiff's name appears throughout the filings spelled
either "Shannell" or "Shanell." The caption of the state court
Complaint is "Shannell." [Notice of Removal, filed 6/15/17
(dkt. no. 1), Exh. 1 at CM/ECF pg. 1.]

supersedes that entering order.  Defendants' Motion is hereby
granted for the reasons set forth below.

**BACKGROUND**

## I.  <u>Factual Background</u>

Defendants are involved in commercial corn seed
production and have a 2,600-acre facility in Waialua, Hawai`i,
where they grow corn seed that is sold in the United States and
internationally.  [Defs.' Concise Statement of Facts in Supp. of
Defs.' Motion ("CSOF"), filed 8/21/19 (dkt. no. 48), Decl. of
Michelle Matsuda ("Matsuda Decl.") at ¶ 2.[2]]  Plaintiff began
working for Defendants through Kelly Services, Inc. on
August 24, 2013 and was hired by Defendants directly for the
position of field worker on December 6, 2013.  [CSOF at ¶ 1;
Pltf.'s Concise Statement of Facts in Supp. of Pltf.'s Mem. in
Opp. to Motion ("Opp. CSOF"), filed 9/20/19 (dkt. no 50-1), at
¶ 1.[3]]  On an unspecified date, Plaintiff received Defendants'

---

[2] Michelle Matsuda is Defendants' Human Resources Manager.
[Matsuda Decl., Exh. G at 1 (email to Plaintiff from
Ms. Matsuda, as Defendants' Human Resources Manager for the
Hawaii Region).]

[3] Plaintiff does not contest CSOF ¶¶ 1, 2, 3, 5, 7, 8, 9,
10, 12, 13, 14, 15, 16, 19, 20, 21, 22, 23, and 24.  [Opp. CSOF
at ¶ 1.]  Therefore, those paragraphs are deemed admitted.  <u>See</u>
Local Rule LR56.1(g) ("For purposes of a motion for summary
judgment, material facts set forth in the moving party's concise
statement will be deemed admitted unless controverted by a
separate concise statement of the opposing party.").

Code of Conduct.  On August 25, 2014, Plaintiff became a
production technician, a regular, part-time, hourly position,
and received a summary of benefits, including long term
disability benefits.  [CSOF at ¶¶ 2-3.]  Plaintiff alleges that
at some point she was transferred from the shade houses to the
rouging department (removing defective plants from the fields).
[Pltf.'s Decl. at ¶ 28.]

        On February 9, 2015, Plaintiff went on leave due to a
knee injury.  [CSOF at ¶ 6.[4]]  Plaintiff was predicted to be able
to return to work February 10, 2015 at light duty, and full duty
on February 17, 2015, however her return to work date was
changed to February 24, 2015.  [Id. ¶¶ 6-7.]  Plaintiff applied
for short term disability benefits in accordance with
Defendants' disability policy.  Her claim was granted on
February 20, 2015.  [Id. at ¶ 8.]  Defendants extended
Plaintiff's leave to May 22, 2015, due to her inability to
return to work.  [Id. at ¶ 9.]  On May 26, 2015, Plaintiff
informed Defendants that she was going to have surgery on her
knee on June 9, 2015 and would be unable to work until July 29,
2015.  [Id. at ¶ 10.]  On June 16, 2015, Plaintiff complained to

---

[4] The approximate date of Plaintiff's knee injury is not
disputed; however, it is disputed whether Plaintiff's knee
injury was work related.  See Opp. CSOF at ¶ 16.  However,
whether or not Plaintiff's knee injury was work related is not
relevant to the instant Motion.

Ms. Matsuda that Plaintiff's supervisor prevented her from receiving a tuition reimbursement and had created a hostile work environment.  Ms. Matsuda documented and investigated Plaintiff's complaint, but ultimately could not substantiate Plaintiff's allegations.  [Matsuda Decl. at ¶¶ 34-35, Exh. O (misconduct investigation report, dated 6/16/15).]

Plaintiff underwent knee surgery on July 9, 2015 and was scheduled to have another on August 28, 2015, which delayed her expected return to work to approximately October 31, 2015. [CSOF at ¶ 12.]  After Plaintiff postponed her second surgery, she was cleared for modified office duty, subject to certain restrictions.  She filed for Long-Term Disability benefits ("LTD") on August 1, 2015.  [Id. at ¶ 13-14.]  It was a violation of company policy for Plaintiff to receive LTD benefits while still employed with Defendants.  See Matsuda Decl. at ¶ 42.  As of August 31, 2015, Plaintiff's modified duty restriction was predicted to end on October 2, 2015.  [CSOF at ¶ 16.]  On September 10, 2015, Plaintiff was terminated, but was reinstated the following day.  See Matsuda Decl. at ¶ 42 (stating Plaintiff was terminated for applying for LTD benefits and reinstated based on her representation that she would not accept them; Opp. CSOF, Decl. of Shannell L. Grilho (Pltf.'s Decl.") at ¶ 38.  On September 29, 2015, Plaintiff's work restrictions were extended to November 9, 2015.  [CSOF at ¶ 19.]

Plaintiff began working again through Kelly Services, Inc. on October 6, 2015, with placement at Direct Support Resources, doing office work.  [Id. at ¶ 20.]  On or around October 19, 2015, Plaintiff returned to work at Defendants in a temporary data entry position that accommodated her work restrictions until November 9, 2015.  [Id. at ¶ 21; Matsuda Decl. at ¶ 54.]  During Plaintiff's October 20, 2015 worker's compensation deposition, Plaintiff denied receiving any LTD benefits.  [CSOF at ¶ 22.]  On November 9, 2015, Plaintiff's work restrictions were extended to December 21, 2015 and, on December 21, 2015, they were extended again to February 1, 2016. [Id. at ¶¶ 23-24.]  On December 23, 2015, Plaintiff was terminated from employment with Defendants because, according to Defendants, Plaintiff was not able to perform the essential functions of any available position, with or without reasonable accommodation.  Matsuda Decl. at ¶ 58; Exh. DD (Plaintiff's termination memo, dated 12/23/15)); see also Pltf.'s Decl. at ¶¶ 45-46 (confirming Plaintiff was terminated on December 23, 2015, but disputing the reason for her termination).  Defendants state that Plaintiff was unable to perform the job of a production technician due to her medical restrictions, and Defendants did not have the need for an employee to do data entry at that time.  [Matsuda Decl. at ¶ 58.]

## II.  **Procedural Background**

On May 12, 2017, Plaintiff initiated this action in
the First Circuit Court for the State of Hawai`i ("State Court")
against Defendants.  [Notice of Removal, Exh. 1 at CM/ECF
pgs. 1-11 (Complaint).]  On June 15, 2017, Defendants filed
their answer to the Complaint ("Answer") in State Court.  [Id.
at CM/ECF pgs. 15-19 (Answer).]  Also on June 15, 2017,
Defendants removed the action to this district court based on
diversity jurisdiction.  See Notice of Removal at ¶¶ 3-7
(alleging Plaintiff is a resident of Hawai`i and Defendants are
foreign corporations).

Plaintiff asserts the following claims: violation of
the Hawaii Whistleblower Protection Act ("HWPA"), Haw. Rev.
Stat. § 378-63, alleging she was discriminated against for
reporting violations or suspected violations to her employer
("Count I");[5] negligent infliction of emotional distress
("Count II"); and intentional infliction of emotional distress
("Count III").  Plaintiff seeks the following relief: special,
general, and consequential damages; pre-judgment and post-
judgment interest; lost wages; punitive and exemplary damages;

---

[5] Count I is construed as a claim brought pursuant to Haw.
Rev. Stat. § 378-62.  Section 378-63 describes the procedure by
which a person may bring a claim under § 378-62, and does not,
in itself, prohibit discharging, threatening, or discriminating
against an employee for reporting violations, or suspected
violations, of law.

attorneys' fees; and any other appropriate relief.  [Complaint at pg. 11.]  On November 20, 2018, the Court issued an order dismissing Counts II and III with prejudice.  [Dkt. no. 42.]

**DISCUSSION**

I.   **Legal Standard for HWPA Claims**

The HWPA provides, in pertinent part:

An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:

(1)  The employee . . . reports or is about to report to the employer, or reports or is about to report to a public body, verbally or in writing, a violation or a suspected violation of:

(A)  A law, rule, ordinance, or regulation, adopted pursuant to law of this State, a political subdivision of this State, or the United States[.]

Haw. Rev. Stat. § 378-62(1)(A).

"In Crosby v. State Department of Budget & Finance, 76 Hawai`i 332, 342, 876 P.2d 1300, 1310 (1994), the Hawaii Supreme Court essentially adopted the familiar McDonnell Douglas burden-shifting framework for claims under Hawaii's Whistleblowers' Protection Act."[6]  Chan v. Wells Fargo Advisors, LLC, 124 F.

---

[6] The "McDonnell Douglas burden-shifting framework" refers to the analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 782 (1973).

Supp. 3d 1045, 1055 (D. Hawai`i 2015).  The Ninth Circuit has

stated:

> Under th[e McDonnell Douglas burden-shifting]
> analysis, plaintiffs must first establish a prima
> facie case of employment discrimination.  Noyes
> v. Kelly Servs., 488 F.3d 1163, 1168 (9th Cir.
> 2007).  If plaintiffs establish a prima facie
> case, "[t]he burden of production, but not
> persuasion, then shifts to the employer to
> articulate some legitimate, nondiscriminatory
> reason for the challenged action." Chuang v.
> Univ. of Cal. Davis, Bd. of Trs., 225 F.3d 1115,
> 1123-24 (9th Cir. 2000).  If defendant meets this
> burden, plaintiffs must then raise a triable
> issue of material fact as to whether the
> defendant's proffered reasons for their
> terminations are mere pretext for unlawful
> discrimination.  Noyes, 488 F.3d at 1168; see
> also Coleman v. Quaker Oats Co., 232 F.3d 1271,
> 1282 (9th Cir. 2000) (plaintiffs must "introduce
> evidence sufficient to raise a genuine issue of
> material fact" as to pretext).

Hawn v. Exec. Jet Mgmt., Inc., 615 F.3d 1151, 1155-56 (9th Cir.

2010) (some alterations in Hawn).  This district court has

stated:

> For a retaliation claim, the plaintiff's
> prima facie case consists of establishing that:
> "(1) [s]he engaged in a protected activity;
> (2) h[er] employer subjected h[er] to an adverse
> employment action; and (3) a causal link exists
> between the protected activity and the adverse
> action." Ray [v. Henderson], 217 F.3d [1234,]
> 1240 [(9th Cir. 2000)].  "The requisite degree of
> proof necessary to establish a prima facie case
> . . . on summary judgment is minimal and does not
> even need to rise to the level of a preponderance
> of the evidence." Wallis v. J.R. Simplot Co., 26
> F.3d 885, 889 (9th Cir. 1994) (citation omitted).

8

<u>Black v. Correa</u>, Civil No. 07-00299 DAE-LEK, 2008 WL 3845230, at
*11 (D. Hawai`i Aug. 18, 2008) (some alterations in <u>Black</u>).

In analyzing whether the defendant took the challenged
action because of the employee's protected activity – *i.e.*
whether there is "a causal connection between the alleged
retaliation and the 'whistleblowing'" – the Hawai`i Supreme
Court has looked to HWPA's legislative history, which "indicates
that the legislature intended that the required burden of proof
be similar to that utilized in traditional labor management
relations discharge cases." <u>Crosby</u>, 76 Hawai`i at 342, 876 P.2d
at 1310. The supreme court noted:

> Under the National Labor Relations Act, as
> amended, 29 U.S.C. §§ 151-168 (1988), an employee
> has the burden of showing that his or her
> protected conduct was a "substantial or
> motivating factor" in the decision to terminate
> the employee. <u>See also</u> <u>Parnar v. Americana
> Hotels, Inc.</u>, 65 Haw. 370, 380, 652 P.2d 625, 631
> (1982) (noting that "the plaintiff alleging a
> retaliatory discharge bears the burden of proving
> that the discharge violates a clear mandate of
> public policy").
>
> In reviewing an initial draft of the HWPA,
> the House Standing Committee reported:
>
> > the bill imposes the burden of proof on the
> > employee and also establishes a higher
> > standard of proof than normally applied in
> > civil cases. Under existing custom and
> > practice in labor management relations
> > discharge cases, the burden of proof is
> > placed on the employer. Accordingly, your
> > Committee amended the bill to remove
> > subsection (d) of section -3, thereby
> > maintaining the existing custom and practice

9

> of placing the burden of proof on the
> employer in discharge cases.
>
> Hse. Stand. Comm. Rep. No. 25, in 1987 House
> Journal, at 1090.  We note, however, that an
> aggrieved employee always retains the ultimate
> burden of proof in a retaliatory discharge case.
> Sonicraft, Inc. v. NLRB, 905 F.2d 146, 150 (7th
> Cir. 1990), *cert. denied*, 498 U.S. 1024, 111 S.
> Ct. 671, 112 L. Ed. 2d 664 (1991).  The
> legislature must have been referring to the
> corresponding rule that "the burden of negating
> causation is on the employer."  Id.  Once the
> employee shows that the employer's disapproval of
> his [protected activity] played a role in the
> employer's action against him or her, "[t]he
> employer can defend affirmatively by showing that
> the termination would have occurred regardless of
> the protected activity."  NLRB v. Howard Elec.
> Co., 873 F.2d 1287, 1290 (9th Cir. 1989) (citing
> NLRB v. Transportation Management Corp., 462 U.S.
> 393, 401–03, 103 S. Ct. 2469, 2474, 76 L. Ed. 2d
> 667 (1983)).[7]  "In other words, the employer has
> an affirmative defense (no causation), as to
> which of course he bears the burden of
> persuasion, but so far as the main case is
> concerned the burden of persuasion never shifts."
> Sonicraft, 905 F.2d at 150. . . .

Id. (some alterations in Crosby) (footnote omitted).

## II.  **Application of the HWPA Legal Standard**

For purposes of the Motion, Defendants do not contest that Plaintiff engaged in protected activity, therefore the first element of Plaintiff's prima facie case is not at issue. See Mem. in Supp. of Motion at 15.  With regard to the second

---

[7] Transportation Management Corp. was abrogated on other grounds by Director, Office of Workers' Compensation Programs, Department of Labor v. Greenwich Collieries, 512 U.S. 267 (1994).

element, Plaintiff alleges several discrete events constitute
adverse employment actions, either collectively or individually.
In her Complaint, Plaintiff  alleges adverse employment actions,
including, but not necessarily limited to: 1) her termination;
[Complaint at ¶ 41;] 2) her transfer to different duties; [id.
at ¶¶ 24-25;] 3) the fact that Defendants did not fund her
Education Assistance Program; [id. at ¶ 30;] and 4) the
termination of her husband's employment from Defendants, [id. at
45].  Of the adverse employment actions alleged in the
Complaint, only two are also alleged in Plaintiff's Memorandum
in Opposition: 1) termination; and 2) transfer to different
duties.  See Mem. in Opp. at 2-3.  When a plaintiff does not
address a claim in her memorandum in opposition to a motion for
summary judgment, the plaintiff is deemed to have abandoned the
claim and entry of summary judgment is appropriate.  Knowles v.
Hawai`i Pac. Univ., Civ. No. 16-00678 ACK-KSC, 2018 WL 3370520,
at *7 (D. Hawai`i July 10, 2018) (some citations omitted)
(citing Shakur v. Schriro, 514 F.3d 878, 892 (9th Cir. 2008)).
Therefore, the adverse employment actions alleged in the
Complaint other than Plaintiff's termination and transfer
(including but not limited to, her denied tuition reimbursement
request and her husband's termination) are deemed abandoned.

A closer question is presented by the adverse
employment actions asserted for the first time in Plaintiff's

11

Memorandum in Opposition.  There, Plaintiff alleges, for the first time, that the following events constitute adverse employment actions:

> (1) Defendants refused to provide Plaintiff safety training on the proper handling of hazardous chemical and the required protections from exposure to such hazardous chemicals;
> (2) Defendants forced her to remain in close proximity to the boom sprayers during deployment exposing her to hazardous chemicals; [and]
> (3) Defendants scolded her for reporting her safety concerns[.]

[Mem. in Opp. at 6 (citations omitted).]  While all of the above events were alleged, or at least referenced, as facts in her Complaint, most were not alleged as retaliation-induced adverse employment actions foundational to her claims.  Instead, in the Complaint, the above events were included as the content of Plaintiff's complaints to management that formed the basis of her protected activity.  See Complaint at ¶¶ 15 (alleging Plaintiff's supervisor denied her request for training and equipment), 19-24 (alleging that, after Plaintiff complained about the lack of training and protective equipment, and her proximity to chemicals to her supervisor, Plaintiff was reprimanded by her supervisor, which she then complained about to his supervisor, which caused Defendants to retaliate against Plaintiff by transferring her).  Because Plaintiff has alleged each of the above events as a separate and distinct adverse employment action, each one potentially constituting a new HWPA

12

claim.  See Mem. in Opp. at 7 (arguing the alleged events

"create genuine issues of material fact as to whether they

constitute, individually or collectively, adverse employment

actions").

>    The Ninth Circuit has stated:
>
>> "when issues are raised in opposition to a motion
>> to summary judgment that are outside the scope of
>> the complaint, '[t]he district court should have
>> construed [the matter raised] as a request
>> pursuant to rule 15(b) of the Federal Rules of
>> Civil Procedure to amend the pleadings out of
>> time.'"  Apache Survival Coal. v. United States,
>> 21 F.3d 895, 910 (9th Cir. 1994) (quoting Johnson
>> v. Mateer, 625 F.2d 240, 242 (9th Cir. 1980)).

Desertrain v. City of Los Angeles, 754 F.3d 1147, 1154 (9th Cir.

2014) (alterations in Desertrain).  Thus, the question is

whether leave to amend is warranted.  Courts consider five

factors when addressing "a motion for leave to amend: bad faith,

undue delay, prejudice to the opposing party, futility of

amendment, and whether the plaintiff has previously amended the

complaint."  Id. (citation and quotation marks omitted).

>    Here, there is no evidence either for, or against, a

finding of bad faith.  However, the delay would be undue,

because Plaintiff was aware of the factual basis for her

additional adverse employment actions at the time she filed her

Complaint.  Cf. id. (finding there was no undue delay because

the late added claim was based on policies not fully understood

by the plaintiffs until the defendants provided them with

13

internal memoranda late in the discovery period).  On one hand, because Defendants were not put on notice of the newly alleged claims before filing the Motion, they would be prejudiced if Plaintiff were allowed to pursue those claims because Defendants did not have the opportunity to address those claims in their Motion.  On the other hand, Defendants would not be prejudiced by Plaintiff amending her Complaint because the Motion would be granted even if she is allowed to amend.  Further, allowing Plaintiff to amend her Complaint would be futile because the Motion would be granted with, or without, the new HWPA claims. This would be Plaintiff's first amendment to the Complaint.

Leave to amend under Rule 15 should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2). Furthermore, "this policy is to be applied with extreme liberality."  Desertrain, 754 F.3d at 1154 (citation and quotation marks omitted).  "'Prejudice to the opposing party is the most important factor.'"  Barranco v. 3D Sys. Corp., CIVIL NO. 13-00412 LEK-RLP, 2014 WL 12650105, at *3 (D. Hawai`i Nov. 4, 2014) (quoting Jackson v. Bank of Haw., 902 F.2d 1385, 1387 (9th Cir. 1990) (citing Zenith Radio Corp. v. Hazeltine Research Inc., 401 U.S. 321, 330-31 (1971) (court required to take potential prejudice into account in deciding Rule 15(a) motion); and 6 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure: Civil 2d § 1487 (1990))); see also Gibo v. U.S. Bank

14

Nat'l Ass'n, CIVIL NO. 12-00514 SOM-RLP, 2018 WL 7198180, at *2
(D. Hawai`i June 14, 2018) (citing same).  Here, the potential
prejudice to Defendants, along with the other factors, does not
warrant denying amendment of the Complaint.  Therefore the Court
will consider all five of Plaintiff's alleged adverse employment
actions.

    A.    **Termination**

        As to the second and third elements of the prima facie
HWPA claim analysis, Plaintiff alleges she was terminated "in
retaliation for her long-standing whistleblowing activities and
her allegations of retaliation made through her attorney."
[Complaint at ¶ 41.]  Defendants argue: 1) Plaintiff's
termination was not "an adverse employment action because it was
brought about by Plaintiff's extended leave of absence due to
work restrictions and [Defendants'] inability to accommodate
these restrictions beyond the already permitted 10 (ten) month
period"; [Mem. in Supp. of Motion at 16;] and 2) even if
Plaintiff's termination was an adverse employment action, it was
not caused by her protected activity, [id. at 23].

        1.    **Adverse Employment Action**

        Defendants' argument that termination is not an
adverse employment action is rejected.  Defendants' argument
about what "brought about" Plaintiff's termination is an
argument about what caused her termination, not whether

15

termination itself is an adverse employment action.  See id. at
16.  Because an adverse employment action is an event that "is
reasonably likely to deter the charging party or others from
engaging in protected activity" and termination is likely to
deter employees from engaging in a protected activity,
termination is an adverse employment action.  See Ray, 217 F.3d
at 1245 (citation and quotation marks omitted).  Therefore,
Plaintiff's termination constitutes a prima facie showing of an
adverse employment action.

### 2.   Causation

        The final element of Plaintiff's prima facie case is
causation.  See Ray, 217 F.3d at 1240.  As with the preceding
elements of her prima face case, Plaintiff's burden of proof at
the causation stage is minimal.  See Aragon v. Republic Silver
State Disposal, 292 F.3d 654, 660 (9th Cir. 2002).  To make a
prima facie showing of a causal connection, - i.e. that the
plaintiff's protected activity was a substantial or motivating
factor in the adverse employment action,

        "a plaintiff can introduce evidence regarding the
        'proximity in time between the protected action
        and the allegedly retaliatory employment
        decision,' from which a 'jury logically could
        infer' [the connection]." Griffin [v. JTSI,
        Inc.], 654 F. Supp. 2d [1122,] 1132 [(D. Hawai`i
        2008)] (quoting Coszalter v. City of Salem, 320
        F.3d 968, 977 (9th Cir. 2003)).  That is,
        "[although] an employee may always present direct
        evidence of motive, proximity in time is one type
        of circumstantial evidence that is sufficient on

16

its own to meet the plaintiff's burden."  Id.
(citation omitted).

Tagupa v. VIPdesk, Inc., 125 F. Supp. 3d 1108, 1120 (D. Hawai`i
2015) (some alterations in Tagupa).

Here, Plaintiff argues the Court should find a causal
link based on temporal proximity because "[t]he gap of seven
months between February 2015 and her termination on December 23,
2015, cannot be counted against her because she was on worker's
compensation leave of disability, because she was not working
during that time." [Mem. in Opp. at 10.]  Plaintiff has not
presented any authority to support this proposition.  However,
Plaintiff's status on worker's compensation disability leave is
a factor considered by the Court as part of the circumstances
surrounding her temporal proximity argument.

In one case, the Ninth Circuit held that an eight-
month gap between a plaintiff's protected activity and the
alleged retaliation "does not permit an inference of causation."
Woods v. Washington, 475 F. App'x 111, 113 (9th Cir. 2012)
(citing Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054,
1065 (9th Cir. 2002)).  In Clark County School District v.
Breeden, the United States Supreme Court noted that the
requisite temporal proximity "must be very close" if temporal
proximity is the only evidence of causation.  532 U.S. 268, 273
(2001) (per curiam) (citations and internal quotation marks

omitted).  However, the Ninth Circuit also "cautioned that courts should not engage in a mechanical inquiry into the amount of time between the speech and alleged retaliatory action." Anthoine v. N. Cent. Ctys. Consortium, 605 F.3d 740, 751 (9th Cir. 2010) (citation omitted).  "There is no 'bright line' rule providing that any particular period is always too long or always short enough to support an inference."  You v. Longs Drugs Stores Cal., LLC, 937 F. Supp. 2d 1237, 1258 (D. Hawai`i 2013) (citing Coszalter v. City of Salem, 320 F.3d 968, 977–78 (9th Cir. 2003)), aff'd, 594 F. App'x 438 (9th Cir. 2015). Therefore, "whether an adverse employment action is intended to be retaliatory is a question of fact that must be decided in the light of the timing and the surrounding circumstances." Anthoine, 605 F.3d at 751 (brackets, citation, and quotation marks omitted).  Based on Breeden and Anthoine, while temporal proximity is not necessarily conclusive as to the issue of causation, where it is the only evidence offered by the plaintiff, the absence of sufficient proximity is fatal to the plaintiff's prima facie case.

Approximately ten months elapsed between Plaintiff's protected activity and her termination.  See Mem. in Opp. at 10. During the ten-month gap, Defendants repeatedly extended Plaintiff's leave, and contacted Plaintiff to attempt to discuss potential accommodations and offer her work that fit those

18

accommodations.  See, e.g., CSOF at ¶¶ 9 (stating Defendants granted Plaintiff leave from February 28, 2015 through May 22, 2015), 21 (stating that, in October 2015, Defendants met with Plaintiff to discuss potential accommodations and found a temporary data entry position for Plaintiff).  Plaintiff was terminated by Defendants on September 10, 2015, but reinstated on September 11, 2015.  [Matsuda Decl. at ¶ 42; Pltf.'s Decl. at ¶¶ 35-41).]  Defendants allege Plaintiff's September 10, 2015 termination was due to Plaintiff applying for and accepting LTD benefits, and her reinstatement was due to Plaintiff's subsequent representation to Ms. Matsuda that she would not be accepting LTD benefits.  [Matsuda Decl. at ¶ 42).]  Plaintiff disputes the reasons proffered by Defendants, but not the fact that she was terminated and reinstated.  See Pltf.'s Decl. at ¶¶ 37-41.

     The events of 2015 – Plaintiff's engagement in protected activity through February, her disability leave, her termination and immediate reinstatement in September, her return to work in an accommodation position in October that lasted until November, and her termination in December - do not give rise, through temporal proximity or otherwise, to an inference that Plaintiff's termination was caused by her February protected activity.  Thus, the undisputed facts are inconsistent with a finding of a causal link as required at this stage in the

prima facie case.  In sum, temporal proximity is lacking, and
the surrounding circumstances do not support a finding of
causation.  For these reasons, Plaintiff has not satisfied the
causation element of her prima facie case.

### 3.   Defendants' Legitimate Proffered Reason

Even if Plaintiff had made a prima facie showing of
causation, she still does not meet her burden on the remaining
steps of the McDonnell Douglas burden-shifting analysis.  "Under
this analysis, employers are 'entitled to summary judgment if
they can demonstrate that they would have reached the same
adverse employment decision even in the absence of the
employee's protected conduct.'"  Tagupa, 125 F. Supp. 3d at 1120
(some citations and internal quotation marks omitted) (quoting
Anthoine v. N. Cent. Counties Consortium, 605 F.3d 740, 752 (9th
Cir. 2010)).  Defendants have presented evidence that Plaintiff
was ultimately terminated on December 23, 2015 because she was
not able "to perform the essential functions of any job position
at DuPont Pioneer with or without reasonable accommodation."
[Matsuda Decl. at ¶ 58; Exh. DD (termination letter from
Defendants to Plaintiff, dated 12/23/15, stating same).]

Defendants also argue that, although Plaintiff was
terminated because there were no positions she could perform
with or without reasonable accommodation, they also could have
terminated her for accepting LTD benefits.  [Mem. in Supp. of

Motion at 32.]  Ms. Matsuda did not learn that Plaintiff had
accepted LTD benefits until after Plaintiff had already been
terminated.  Matsuda Decl. at ¶ 59; see also CSOF, Decl. of
Wayne S. Yoshigai, Exh. GG (excerpts of trans. of 2/13/19 depo.
of Pltf ("Pltf.'s Depo.")) at 99-100.  Plaintiff has not
presented any evidence indicating that, prior to her
termination, Defendants were aware of her acceptance of LTD
benefits.  Defendants do not argue that Plaintiff was actually
terminated because she accepted LTD benefits, but only that she
could have been terminated for accepting LTD benefits regardless
of her protected activity.  Therefore, Defendants allege two
distinct, legitimate, nondiscriminatory reasons for Plaintiff's
termination: 1) the proffered reason Plaintiff was actually
terminated; and 2) a secondary reason Defendants discovered
after Plaintiff's termination that would nonetheless satisfy
Defendants' burden of demonstrating a legitimate reason for
Plaintiff's termination, see Nabors Alaska Drilling, Inc. v.
N.L.R.B., 190 F.3d 1008, 1015 (9th Cir. 1999).

       Because Defendants satisfied their burden of
production, the burden shifts back to Plaintiff to raise a
triable issue of material fact with regard to whether the
reasons proffered by Defendants are "mere pretext for unlawful
discrimination."  Hawn, 615 F.3d at 1155 (citations omitted).

21

a.   **Inability to Accommodate Plaintiff**

A plaintiff may meet the burden to show pretext using either direct or circumstantial evidence.  Direct evidence is evidence "which, if believed, proves the fact [of discriminatory animus] without inference or presumption." Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1221 (9th Cir. 1998) (quoting Davis v. Chevron, U.S.A., Inc., 14 F.3d 1082, 1085 (5th Cir. 1994)) (alteration in original).  Direct evidence typically consists of clearly . . . discriminatory statements or actions by the employer.

Circumstantial evidence, in contrast, is evidence that requires an additional inferential step to demonstrate discrimination.  It can take two forms.  First, the plaintiff can make an affirmative case that the employer is biased. For example, statistical evidence is circumstantial evidence that could, if sufficiently probative, point to bias.  See Aragon, 292 F.3d at 663.  Second, the plaintiff can make his case negatively, by showing that the employer's proffered explanation for the adverse action is "unworthy of credence."  Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 256, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981).  As the Supreme Court has explained:

> Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive.

Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 147, 120 S. Ct. 2097, 147 L.Ed.2d 105 (2000).  The distinction between direct and circumstantial evidence is crucial, because it controls the amount of evidence that the plaintiff must present in order to defeat the employer's motion for summary judgment. . . . [W]hen the plaintiff relies on circumstantial evidence, that evidence must be "specific and substantial" to defeat the employer's motion for

22

summary judgment.  [<u>Godwin</u>, 150 F.3d] at 1222
(internal quotation marks removed); <u>see also</u>
<u>Aragon</u>, 292 F.3d at 661.

<u>Coghlan v. Am. Seafoods Co.</u>, 413 F.3d 1090, 1094–96 (9th Cir.

2005) (some alterations in <u>Coghlan</u>) (footnotes and some

citations omitted).  However, not all evidence is accepted at

face value, even on summary judgment.  The Ninth Circuit has

recognized that:

> a "district court may not disregard a piece of
> evidence at the summary judgment stage solely
> based on its self-serving nature." <u>Nigro v.</u>
> <u>Sears, Roebuck & Co.</u>, 784 F.3d 495, 497 (9th Cir.
> 2015).  However, a district court may disregard a
> self-serving declaration when, as here, the
> declaration "states only conclusions and not
> facts that would be admissible evidence." <u>Id.</u>

<u>Lumens Co. v. GoEco LED, LLC</u>, No. 18-55221, 2020 WL 883369, at

*3 n.1 (9th Cir. Feb. 24, 2020).

With regard to Defendants' first proffered reason for

Plaintiff's termination, its inability to provide a position

Plaintiff could perform the essential functions of, with or

without reasonable accommodation, Plaintiff argues there are

genuine issues of material fact precluding the entry of summary

judgment.  [Mem. in Opp. at 7-8.]  Plaintiff argues that, upon

her reinstatement on September 11, 2015, Defendants told

Plaintiff there was no light duty work available.  Opp. CSOF at

¶ 17 (citation omitted); <u>accord</u> CSOF at ¶ 17 (citation omitted)

(stating, in part, same).  Plaintiff alleges this statement was

23

false, that light duty work was available and Defendants violated a contractual obligation owed to Plaintiff by giving the light duty work to temporary workers.  [Opp. CSOF at ¶ 17 (citing Pltf.'s Decl. at ¶¶ 38-41).]  Finally, Plaintiff alleges that, when Defendants offered Plaintiff temporary work, they required her to be able to lift fifty pounds and wear steel-toed shoes, but other employees were not subject to similar restrictions.  [Id. at ¶ 18 (citing Pltf.'s Decl. at ¶¶ 42-43).] Therefore, Plaintiff implicitly argues these facts raise genuine issues of material fact because they show that Defendants' proffered reason for her termination was pretextual.

The record must be viewed in the light most favorable to Plaintiff as the non-moving party, and all inferences must be drawn in Plaintiff's favor.  See S.R. Nehad v. Browder, 929 F.3d 1125, 1132 (9th Cir. 2019).  Even viewed in the light most favorable to her, none of the allegations made by Plaintiff directly show that Defendants were motivated to terminate Plaintiff because of her protected activity.  Instead, Plaintiff's argument requires the Court to infer that Defendants gave work to temporary workers instead of Plaintiff or subjected her to additional employment requirements in retaliation for Plaintiff's protected activity.  Because an inferential step is required to connect Plaintiff's allegations to a finding her termination was pretextual, Plaintiff is relying on

24

circumstantial evidence.  Because "circumstantial evidence of
pretext must be specific **and** substantial" in order to survive
summary judgment, <u>Becerril v. Pima County Assessor's Office</u>, 587
F.3d 1162, 1163 (9th Cir. 2009) (per curiam) (emphasis added)
(citation omitted), Plaintiff's evidence must be specific and
substantial to prevent entry of summary judgment in Defendants'
favor.

     Plaintiff's allegation that Defendants violated a
contractual obligation to offer her light duty work before
temporary workers is rejected because it does not suggest that
Defendants' proffered reason is "unworthy of credence."  <u>See</u>
<u>Burdine</u>, 450 U.S. at 256 (citation omitted).  The inferential
leap Plaintiff needs the Court to make is that Defendants chose
to not assign her to a light-duty job, staffed at the time by a
temporary worker, as retaliation for her protected activity.
This inference is based on Defendants' alleged obligation to
give Plaintiff hiring and transfer priority, and because
Defendants did not fulfill their obligation, the implication is
that Defendants were motivated by retaliation.  But the record
is devoid of evidence that Defendants had a policy or practice
creating an obligation to give Plaintiff priority over temporary
workers.  Hence, Plaintiff essentially is contending that a
contract existed which gave rise to said obligation, and
Defendants breached that contract.  <u>See</u> Opp. CSOF at ¶ 17

(citing Pltf.'s Decl. at ¶¶ 38-41).  Plaintiff provides no
evidence of such a contract.  Therefore, Plaintiff's allegation
that an unidentified contract has been breached is not
admissible as evidence at the summary judgment stage.  See Nat'l
Steel Corp. v. Golden Eagle Ins. Co., 121 F.3d 496, 502 (9th
Cir. 1997) (holding the district court did not abuse its
discretion in concluding that deposition testimony which
described the contents of, but did not identify, a document was
inadmissible as evidence and therefore insufficient to prevent
entry of summary judgment).

        With regard to Plaintiff's allegation that other
workers were not subject to the same requirements as Plaintiff,
this district court's decision in Knowles, 2018 WL 3370520, is
instructive.  There, a university professor brought, an
employment retaliation claim to which the district court applied
the McDonnell Douglas burden shifting-analysis.  Id. at *7-8.
The plaintiff alleged he was terminated in retaliation for
engaging in protected activity, but the defendant-employer
presented evidence that he was terminated for, in brief,
teaching at competitor universities in violation of policy and
not attending mandatory meetings.  Id. at *8-9.  To refute the
defendant's proffered, legitimate reason for his termination, in
addition to a temporal proximity argument, the plaintiff alleged
that ten to fifteen other faculty members also taught at the

competitor universities and had not been terminated.  Id. at *9.
The district court found that:

> Plaintiff's contention that there were other
> [Hawai`i Pacific University] faculty who
> simultaneously taught at [the University of
> Hawai`i] amounts to a speculative allegation of
> the sort that does not create a factual dispute
> for purposes of summary judgment, see Nelson [v.
> Pima Cmty. Coll.], 83 F.3d [1075,] 1081–82 [(9th
> Cir. 1996)], and is neither specific nor
> substantial, Stegall [v. Citadel Broad. Co.], 350
> F.3d [1061,] 1066 [(9th Cir. 2003)] (quoting
> Godwin, 150 F.3d at 1222).

Id.  Therefore, the district court granted summary judgement
with respect to the plaintiff's retaliation claim.  Id.

          Here, Plaintiff's allegations do not raise a genuine
issue of material fact.  See Fed. R. Civ. P. 56(a) (stating a
party is entitled to summary judgment "if the movant shows that
there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law")  Plaintiff
makes an unsupported, speculative allegation regarding the
employment requirements of unnamed, unidentified employees,
working unspecified jobs.  The conclusory nature of Plaintiff's
allegation does not show that Defendants' proffered reason is
"unworthy of credence."  This failure is fatal to Plaintiff's
showing of causation.  Plaintiff's argument suffers from the
same defects as the allegations raised in Knowles, namely these
allegations are neither specific nor substantial enough to show
the relevancy of the other employees to Plaintiff's

circumstances.  Therefore, the allegations will not prevent entry of summary judgment.

Finally, viewing the allegations in the light most favorable to Plaintiff, including the conclusory allegations, Plaintiff's allegations do not demonstrate that Defendants' proffered reason for her termination was pretextual. Ms. Matsuda noted that, as an agricultural company, Defendants' administrative staffing needs decreased during winter as seed production slowed.  [Matsuda Decl. at ¶ 58.]  Plaintiff was terminated on December 23, 2015, and a temporary agency employee whose duties included data entry was terminated on December 4, 2015 because of a lack of work.  [Id.]  Plaintiff has not presented any evidence contradicting Ms. Matsuda's testimony.

Plaintiff's allegations as to the availability of light-duty work in September and October are completely consistent with Defendants' explanation that it had decreased staffing needs in December, and therefore terminated Plaintiff based on its inability to accommodate her with further light-duty work.  Plaintiff's allegation that Defendants did not provide her with work fails because Plaintiff's inference is contingent on the availability of light-duty work in December 2015.  Plaintiff presents no specific and substantial circumstantial evidence to refute Defendants' explanation that there was no work available at that time.  See id. (stating the

only available position for Plaintiff at the time of her

termination was her original position of production technician).

Plaintiff did not include any allegations in her declaration

that positions were available in late December 2015.  Thus,

Plaintiff's allegations do not create a factual dispute because,

they do not demonstrate a triable issue of fact regarding

whether Defendants' proffered reason was pretextual.

        For these reasons, the Court concludes that Plaintiff

has not shown that there is a genuine issue of material fact

with regard to the legitimate reason for her termination

proffered by Defendants.

### b.   Long-Term Disability Benefits

        Defendants also argue that they could have, but did

not, terminate Plaintiff for accepting LTD benefits while still

employed, in violation of company policy.  [Mem. in Supp. of

Motion at 32.]  As explained in Griffin, "[a]n employer may

negate causation ex post facto by presenting evidence of other

reasons for termination outside of the protected conduct, even

if the other reasons were unknown to the employer at the time of

termination."  654 F. Supp. 2d at 1132 (citing Nabors Alaska

Drilling, Inc. v. N.L.R.B., 190 F.3d 1008, 1015 (9th Cir.

1999)).  Because Plaintiff fails to demonstrate that Defendants'

proffered reason for why they **actually** terminated Plaintiff is

pretextual, the Court need not reach a secondary reason offered

as to why Defendants **could have** terminated Plaintiff. Therefore, the Court will not address Plaintiff's argument regarding her LTD benefits.

        In sum, with regard to the first alleged adverse employment action, termination, Plaintiff has failed to carry her minimal burden of persuasion.  See <u>Wallis</u>, 26 F.3d at 889. Plaintiff failed to demonstrate a prima facie case for causation and, even if Plaintiff had shown causation, she did not demonstrate a genuine issue of material fact remains with regard to Defendants' legitimate reason for her termination. Therefore, summary judgment is granted with respect to Plaintiff's HWPA claim premised on her termination.[8]

---

[8] Plaintiff alleges her attorney sent Defendants a demand letter on December 1, 2015, detailing the extent of her whistleblowing activity.  [Pltf.'s Decl. at ¶ 44.]  However, she also argues there was a gap between her protected activity and her termination from February 2015 through December 23, 2015. [Mem. in Opp. at 10.]  Therefore, it is not clear if Plaintiff is alleging that the December 1, 2015 demand letter constitutes protected activity for the purpose of calculating temporal proximity.  On a motion for summary judgment, the record must be construed in the light most favorable to her, but the ambiguity does not offer relief.  Regardless of whether Plaintiff's December 1, 2015 demand letter constituted protected activity, Plaintiff did not rebut Defendants' legitimate reason for her termination at the last step of the <u>McDonnell Douglas</u> burden shifting analysis.  Therefore, a finding that Plaintiff's December 1, 2015 demand letter constituted protected activity would not prevent entry of summary judgment.

B.     **Transfer to Rouging**

Plaintiff alleges that, following her protected activity in the form of complaints regarding her immediate supervisor Alex Lehman's violations of law to his supervisor Alika Napier, Plaintiff was "transferred out of the shade-house to work rouging (removing defective or inferior plants) in the field in retaliation." [Pltf.'s Decl. at ¶¶ 26-28.]  Plaintiff alleges this change in duty constituted an adverse employment action.  See Mem. in Opp. at 6-7.  The McDonnell Douglas burden shifting analysis as above applies this alleged adverse employment action.  See *supra* Discussion § I.A.

1.   **Causation**

As previously noted, it is undisputed that Plaintiff engaged in protected activity.  Assuming, without deciding, that the change in duty to rouging was an adverse employment action, the disputed issue is whether Plaintiff has demonstrated a prima facie case for a causal link between her protected activity and the alleged adverse employment action.

Plaintiff's only statement directly addressing causation with regard to her transfer is a conclusory allegation that it was done out of retaliation.  See Pltf.'s Decl. at ¶ 28.  This allegation is conclusory on the issue it seeks to prove, and therefore does not constitute evidence of causation.  See Nigro, 784 F.3d at 497 ("The district court can disregard a

31

self-serving declaration that states only conclusions and not
facts that would be admissible evidence." (citations omitted)).

Plaintiff's other argument for causation is based on
temporal proximity, but she has not identified evidence showing
when her transfer to rouging occurred.  "[J]udges are not like
pigs, hunting for truffles buried in briefs." Indep. Towers of
Wash. v. Wash., 350 F.3d 925, 929 (9th Cir. 2003) (citation and
quotation marks omitted).  Therefore, temporal proximity either
will or will not be found based on the facts apparent from the
submitted admissible evidence.  That is to say, the Court will
not "manufacture arguments" for Plaintiff with regard to
temporal proximity.  See id. (citation and quotation marks
omitted).

In January 2014, Plaintiff began reporting safety
violations to her supervisors.  [Pltf.'s Decl. at ¶ 26.]  In
August 2014, Plaintiff became a regular, part-time employee as a
Production Technician and received a pay raise.  [Matsuda Decl.
at ¶¶ 11-12 (citing Exh. C (job offer letter from Justin Alika
Napier, Field Operations Manager, to Plaintiff, dated
8/13/15))].  In early February 2015, Plaintiff sustained an
injury to her knee and went on leave from work.  [CSOF at ¶ 6;
Opp. CSOF at ¶ 16.]  The series of events does not give rise to
an inference of a causal link between Plaintiff's protected
activity and her transfer to rouging.  Plaintiff's transfer

could have taken place at any time between January 2014 and February 2015.  See Pltf.'s Decl. at ¶¶ 26-35.  Therefore, the Court is unable to determine whether her transfer "follow[ed] on the heels of [her] protected activity."  See Davis [v. Team Elec. Co.], 520 F.3d [1080,] 1094 [(9th Cir. 2008)] (citation and quotation marks omitted omitted).  In sum, Plaintiff has not alleged enough facts to support a finding of temporal proximity.  For these reasons, Plaintiff has failed to demonstrate her prima facie case.

### 2.   **Defendants' Legitimate Proffered Reason**

Even if Plaintiff had demonstrated her prima facie case, she has not shown that Defendants' proffered reason for her transfer was pretextual.  See Hawn, 615 F.3d at 1155 (describing McDonnell Douglas burden-shifting analysis). Defendants' proffered reason for Plaintiff's transfer was that rouging was part of her regular duties as a production technician, and the transfer was effectuated because they intended to promote Plaintiff to be the rouging leader when the leader at the time retired, which was expected to happen within a few weeks of her transfer.  See Reply at 4-5 n.2; Pltf.'s Depo. at 46, 253.[9]  Because Defendants proffered a legitimate

---

[9] In the pages of Plaintiff's deposition cited by Defendants, Plaintiff admits one of the reasons she was transferred was the opportunity to take over for the retiring rouging lead.

reason for Plaintiff's transfer, Plaintiff has the ultimate
burden of showing that reason is pretextual.  <u>See</u> <u>Manatt</u>, 339
F.3d at 800.  Plaintiff's only evidence, temporal proximity,
does not create a genuine issue of material fact with respect to
Defendants' proffered explanation for Plaintiff's transfer.
Defendants sufficiently explained the timing of Plaintiff's
transfer as related to the forthcoming retirement of the rouging
leader.  Plaintiff's general allegations of temporal proximity
do not constitute specific and substantial evidence that
Defendants' proffered reason is "unworthy of credence."
Therefore, Plaintiff has failed to raise a genuine issue of
material fact with regard to Defendants' legitimate reason for
transferring her.

    In sum, Plaintiff failed to demonstrate a prima facie
case with respect to her claim that her transfer to rouging was
retaliatory.  Furthermore, even if she had made such a prima
facie case, she did not rebut Defendants' legitimate reason
proffered for her transfer.  Therefore, because Plaintiff has
failed to demonstrate any genuine issues of material fact,
summary judgment is appropriate with respect to this claim.

    **C.**   <u>**Remaining Allegations of Adverse Employment Action**</u>

    In addition to the above adverse employment actions,
Plaintiff also alleges Defendants: 1) did not provide her with
training and protective equipment; 2) positioned her too close

34

the chemical sprayers; and 3) scolded her for reporting the violations or suspected violations.

### 1.   **Training, Equipment, and Proximity to Sprayers**

Plaintiff's allegations of adverse employment actions with regard to deprivation of training, denial of protective equipment, and improper proximity to the sprayer are denied because Plaintiff cannot establish a prima facie case on the element of causation.  All three alleged adverse employment actions are claimed, by Plaintiff, to have preceded her protected activity.  See Pltf.'s Decl. at ¶¶ 12-27 (alleging Plaintiff's protected activity was complaining about these exact issues to her supervisors).  There can be no causal link where, as here, the alleged adverse employment actions happened before the subject protected activity.  See, e.g., Huitt v. Optum Health Servs., 216 F. Supp. 3d 1179, 1193 (D. Or. 2016) (concluding there was no causal link because the alleged adverse employment action occurred before the alleged protected activity).  Therefore, Plaintiff has failed to demonstrate causation for the above adverse employment actions.

### 2.   **Scolding**

Plaintiff alleges she was subjected to an adverse employment action when she was scolded for reporting safety violations.  [Mem. in Opp. at 6 (citing Pltf.'s Decl. at ¶ 26)].  However, "[m]ere harsh words or threats are insufficient to

constitute an actionable adverse employment action." <u>Bollinger v. Thawley</u>, 304 F. App'x 612, 614 (9th Cir. 2008) (citing <u>Nunez v. City of Los Angeles</u>, 147 F.3d 867, 875 (9th Cir. 1998)). Because this claimed adverse employment action consists of no more than allegations of harsh words, Plaintiff has failed to establish her prima facie case.

Therefore, with respect to the adverse employment actions newly alleged in Plaintiff's Memorandum in Opposition, because Plaintiff has failed to carry her burden under the <u>McDonnell Douglas</u> burden shifting analysis, her claims are rejected.  There are no outstanding genuine issues of material fact, therefore, summary judgment is warranted.

For these reasons, summary judgment is granted in favor of Defendants as to Count I.

<u>**CONCLUSION**</u>

On the basis of the foregoing, Defendants' Motion for Summary Judgment, filed August 21, 2019, is HEREBY GRANTED. There being no remaining claims in this case, the Clerk's Office is DIRECTED to enter judgment and close this case immediately.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, April 30, 2020.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

SHANNELL GRILHO VS. PIONEER HI-BRED INTERNATIONAL, INC., ET AL;
CIVIL 17-00286 LEK-WRP; ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT